Our next case is No. 21-13668, Sean Reilly v. Mark Inch, Secretary of the Florida Department of Corrections. Mr. Seale. Mr. Seale Good morning. My name is Curtis Seale. I am representing the appellant Sean Reilly. Mr. Reilly is also represented by my law partner, Chambers Waller. The question is, can I ask you to answer this question at some point during your remarks? Yes. Despite the procedural quagmire that this case presents, tell me why it's not susceptible? And I'll ask Mr. Duffy the same question. Why isn't the answer a very simple one? The answer goes like this. To the extent that the current petition challenged the 2009 initial judgment, it is second or successive because of the 2018 petition. But to the extent that it challenged the 2015 V.O.P. judgment, it is not because the 2015 V.O.P. judgment is a new judgment under Patterson, which has never been challenged. And so you don't get to go back to 2009 and litigate what Mr. Reilly litigated in 2018. But he now has a new judgment that put him in jail for an additional period of time and an additional period of supervision for a probation violation in 2015. That's a new judgment under Patterson because it put him in for a different period of time. It's never been challenged. So you can challenge that subject to every other possible procedural problem you may have. Timeliness, procedural default, exhaustion, all those things. But in terms of second and successive, why isn't that a very simple way of resolving this case? Well, I'll start with the latter. And I agree, the 2015 judgment has never been challenged, so that should not be deemed second or successive. But with respect to the 2009 original judgment, that could not have been brought in the 2018 petition. Sure, it could have. And the reason for that is the exhaustion requirement. No, you could have brought it because you had challenged the 2009 judgment on direct appeal. And you could have raised exhausted claims in the 2018 petition. Or you could have waited until all the state post-conviction stuff was done on both the 2009 judgment and the 2010 VOP judgment. Mr. Reilly just didn't want to do that because he wanted out of prison. But he could have waited until all of that was done. He would have had all of his claims exhausted and he would have been able to challenge both judgments. As a matter of fact, he would have been able to challenge all three judgments because he wouldn't have been time-barred. And I understand that, Your Honor, but I guess... He's jumped the gun. Well, I guess the point here is with respect to the 2009 original judgment, he did file for post-conviction relief in state court. He's still trying to seek remedies in state court with respect to that 2009 original judgment. Then he shouldn't have filed the 2018 petition on the 2010 VOP judgment. He should have waited until his exhaustion of state remedies was complete as to both the 2009 judgment and the 2010 VOP judgment. The problem with that, Your Honor, is that the 2010 VOP judgment, the statute of limitations under the AEDPA, was already running. So... I don't understand that. Because the mandate and the direct appeal had already gone through. His remedies in state court... But then he was tolling. But then he filed state post-conviction on it, which tolls. He filed state post-conviction on the 2009 original. And on the 2010, he filed state post-conviction too, did he not? He did, but at the time that he filed the 2018 petition, the 2009 original judgment was still in state court because he... And how about what had happened to the 2010? The 2010 original had already been exhausted in state court. On the state post-conviction side? Because your chart doesn't explain that. With respect to the 2010 VOP judgment, the District Court of Appeal had issued the mandate affirming that on direct appeal on February 25th of 2014. And then... Direct appeal, okay. On direct appeal. And then he files a 3.850 post-conviction motion a couple weeks later on March 6th of 2014. And when does that finish? The trial court denied that on April 19th of 2018. And when does that get appealed and denied? The trial court appealed the trial court denial of the 2010, I believe that was on May 7th. That was when the... I'm sorry, was your question about the 2009 original judgment? No, the 2010. You told me that he was running out of time on the 2010, so he had to file. And I'm challenging you on that. So I want to know when did the state post-conviction proceedings end on the 2010 judgment? That would have been on April 19th of 2018. On when? April 19th of 2018. That was when the trial court denied his post-conviction relief. That's not when it ends because you have to appeal. You got to go to the DCA to exhaust. Well, the post-conviction motion would have told the statute of limitations for the purposes of the AEDPA on the 2009 original judgment. I'm not talking about the 2009, the 20... You're telling me, okay, let me see if I've got this right. You're telling me that he had to file the 2018 petition because if he didn't file it at that time, he would have been done on the 2010 judgment because his EDPA one-year limit was running. Is that what you're saying? What I'm saying is that he filed what he could do when he could do it because when the 2010 judgment became ripe for review and was exhausted in state court, the statute of limitations starts to run. It's only exhausted in state court once the DCA, in this case the first DCA, is finished with it and a mandate issues. So the question again is, when did the mandate issue from the first DCA on the 2010 judgment? On the state post-conviction. Correct. You've given us the date on which the trial court denied the 3.850 on the 2010 judgment, but to exhaust in state court, you've got to go up the chain at least to the intermediate court of appeals, as Judge Lagoa indicated. So he had to appeal to the first DCA. Did he appeal? He did. When did the first DCA deny 3.850 relief? That would have been on February, I believe it's February 25th of 2014, but. No, it can't be. You told me he filed 3.850 later. Missing that. Okay. Understood. Missing that. So let me give you the hypothetical. Tell me again when the trial court denied 3.850 relief on the 2010 judgment. That would have been on April 19th of 2018. Okay. April 19th of 2018. He has to appeal to the first DCA to exhaust his remedies in state post-conviction before he goes to federal habeas. So there is a period of time. I don't know what it is because your chart is missing it in the brief. His EDPA one-year period doesn't begin to run again until the first DCA affirms the denial of post-conviction relief. And if that happened sometime later in 2018 or given the volume that the DCAs in Florida have sometime in 2019, his EDPA clock didn't start running until that period, which meant that he didn't have to file the 2254 in 2018, which means that your exhaustion argument doesn't stand up. I still think, and I would say, Your Honor, that this is a pro se litigant trying to do what he could do, when he could do it under the framework of the EDPA and this circuit's rules surrounding the EDPA. I know, but the problem, I'm sympathetic to you, and I've mentioned that before in concurrences and dissents here, but most of the habeas law that is developed under EDPA is developed with pro se litigants because they are not entitled constitutionally to counsel at the post-conviction stage. So you can't get away from those cases, even though I'm very sympathetic to what you're saying. So, you don't know, as we stand here, when the DCA denied State 3.850 post-conviction relief on the 2010 judgment? Your Honor, as you pointed out, it is not on the chart that we put in here that I have in front of me, but I will certainly find that answer, and when I come back up here for rebuttal, I will be happy to give that to the court. Okay. If he didn't have to file the 2018 petition because his EDPA time hadn't run, does your exhaustion argument fall? I think he still needed to file it because he had exhausted with respect to the 2010. So he still needed to file it because... But he had not exhausted. He doesn't exhaust until he... I mean, maybe you disagree with his fundamental proposition that to exhaust... Okay. Let's start back at first principles. You have to exhaust state remedies before you go into federal habeas. Agreed? Agreed. Okay. But it is a misconception that you have to go through state post-conviction to exhaust all of your remedies because a litigant may decide, my main interest is in getting out of jail. I don't want to raise any post-conviction claims. The only thing I want to raise in federal habeas are the claims that I raised at trial and were rejected on direct appeal. So as soon as I'm done with state direct appeal, I'm going straight to federal habeas, and I'm raising the single claim that I raised at trial. That's an exhausted claim. I've raised it when I was supposed to raise it at trial. It was rejected by the Florida Courts on Appeal. That's exhausted. I'm going directly into federal court. But if you choose to go into state post-conviction because there are federal claims you want to assert that are not yet exhausted, you have to go all the way up the state chain. You got to go to the trial court, and when you lose there, you got to go to the DCA. So the question of when the DCA ruled on his 3.850 arising out of the 2010 judgment is critical. And I'd be happy to give that answer to the court. When I sit back down, I will reference the record to get that date for the court. I do just want to point out, and I know I'm over my time, if I could respond to that. No, no, no. I've taken you way over your time. So go ahead. Give him another three minutes, please. I understand that Mr. Riley, you know, could have waited or did not have to file for post-conviction relief. And I understand the court's position on that. He could have gone straight with federal habeas relief. But he still has that right to try and seek those post-conviction relief in state court. And that's all he was trying to do. And when he sought that, those post-conviction relief that's supposed to toll the period of time where he could go and seek federal habeas review under the AADPA. That's what he did. And that was what he was operating under, was that this is told. I can go and still try and get this figured out in state court before having to go to the, before going to the federal court. And that's the only, so to respond to your, you know, your point is, yes, that is something that he could have done, but there's no requirement that he has to forego his right to post-conviction relief in state court just in order to seek federal habeas review on his other claims with respect to the direct appeal. Okay. All right. Thank you very much. Mr. Duffy.  May it please the court, counsel. On behalf of the Secretary of the Department of Corrections, I am Thomas Duffy from the Tallahassee Criminal Appeals Bureau. I agree with you, Judge Jordan, this case is simple, perhaps not for the same reasons you believe it is. It all derives from the 2015 judgment. That started everything all over again. Right, so if, but that judgment has never been challenged. The judgment in the 2015 case has been challenged in state court. Not in federal habeas. But I don't think that matters. Of course it matters because you can only reach second or successive problems when you have a succeeding federal habeas petition. There may be all sorts of other procedural problems. There may be timeliness issues, default issues, exhaustion issues or the like. But if you've never filed, if you have a judgment in state court and you've never filed habeas and you file a habeas on it, there can't be a second or successive problem, right? Not until you file another one, no. Correct. So here, there's never been a federal habeas petition challenging the new 2015 V.O.P. judgment. Well, it's the same as happened in Burton v. Stewart. No, it is not because Burton v. Stewart did not have an intervening judgment. Yes, there was a 1994 judgment and that he did not, that he challenged, excuse me, in that 2018 judgment. Burton v. Stewart says, I mean, it's exactly the same as this. He didn't challenge, but he didn't challenge the 2018 judgment in that case. I'm sorry? Okay. You and I are reading that case very, very differently. The 1998 you're talking about? Yes. Okay. Can I ask you a question, which is I know that there's another pending habeas in front of the court. Which judgment is that one? That, I'm not certain. I think the 2020, if I'm not mistaken, is challenged both the 2010 V.O.P. and the 2009 original judgment. The other case that's pending in this Court is challenging the 2009. Okay. Okay. As you said, it is a procedural quagmire. Okay. And I definitely agree with you there. So here, again, here's the way I'm looking at it. To have a second or successive problem, you need to have filed an initial habeas petition in Federal court that attacked a judgment. And now you're filing another Federal habeas petition that is attacking the same judgment. Okay. That's the prototypical second or successive paradigm, right? That is how it typically does arise, yes. Okay. Here, you agree in your brief that the 2015 V.O.P. judgment is a new judgment under Patterson, right? It is. Okay. That judgment has never been challenged in a Federal habeas corpus petition, ever. How can there be a second or successive problem as to that judgment? I agree with you about trying to challenge the 2009 again because of the 2018 habeas. I agree with you there. But after the 2015 judgment, how can there be a second or successive problem when there's never been an initial habeas corpus filing on that judgment? Well, that gets us into challenging claims as opposed to challenging judgments. Correct? Correct. I mean — Like I said, there may be tons of other problems with a habeas petition, but we're only talking second or successive. Every time there's a new judgment under Patterson, you obliterate the second or successive problem because you can now challenge that judgment for the first time, right? You can, but I think with AEDPA, with the second or successive, I see it perhaps more broadly than you do, that what AEDPA wants is for everything to be brought as expeditiously and with as less expenditure of judicial resources as possible. So there was no reason for him to file a 2018 petition. He could have waited until 2021. I mean, you asked the question — I agree with you, but that doesn't cause a second or successive problem. Because he's never challenged a 2015 VOP judgment. I mean, he didn't challenge that in the 2018. But he had the opportunity to, and that's — There may be all sorts of other problems, but it's not — So you would call that a waiver? I don't know what I would call it. I'm not the litigant, but I wouldn't call it a second or successive problem because there's never been a first petition on that judgment. Okay, well, we see that differently, and I understand your point. If he had not filed a 2018 petition — And not filed the 2020 as well, correct? Okay. Yeah. This case goes along with no habeas petitions being filed at all, right? He's fine. He gets the 2015 judgment, and he files a federal habeas corpus petition after exhausting state remedies. For only on the 2015, you're saying? Only on the 2015. He's okay, right? Yeah, he didn't need to do that right away because he was told until 2020. Okay. After he exhausts state remedies on the 2015 VOP judgment, in my hypothetical, he files a federal habeas corpus petition, right? Correct. There's no second or successive problem. No, but he didn't challenge it when he had the opportunity to in 2008. What do you mean the opportunity? I'm sorry? He gets the 2015 VOP judgment, right? Which puts him in jail for another five years. Correct. That's a new judgment under Patterson, right? Absolutely. Okay. He exhausts his state remedies on the 2015 judgment. Let's say that takes him two years. All the way to 2017. In 2018, he timely files a federal habeas corpus petition. There's no second or successive problem, right? But that's not what he did here. I know because I'm giving you a hypothetical. Right. That would have been ... Why is there no second or successive problem in my hypothetical? Because he challenged that in a timely fashion. Timeliness has nothing to do with second or successive. Okay. I understand that. That would have been fine had he challenged the 2015 thing in his 2018 petition. We're not ... No, no, no. You keep trying to go back to ... I'm sorry. I'm not understanding, Your Honor. Okay. I'm going to try to make it more simple because it's probably me who is misspeaking. No. I disagree. Imagine the same sequence of events on the state side. Nothing happening on the federal side. Right. So he never challenges in federal court the 2009 judgment. Never challenges in federal court the 2010 VOP judgment. But then when he gets to 2015 and he gets another five years in prison, he's like, okay, I'm going to federal court. He exhausts his state remedies on the 2015 judgment. Takes him two years to do it. Then he jumps over to federal court and files his first federal habeas corpus petition challenging only the 2015 VOP judgment. He would have been fine. No second or successive problem there, right? No, because that would be the first petition on this judgment. That's exactly what I said. Okay. I think I was agreeing with you all along. I just didn't make myself clear. No. You were fighting. You were fighting. You were trying to say that there was still a problem because of piecemeal attacks. Yes. That's an issue. So you agree that there's no second or successive problem now as to the 2015 judgment. I disagree. Under your hypothetical, I agree completely. That would have been fine. I don't think that applies here because of piecemeal. How does piecemeal work into second or successive? I think it's part and parcel of it. In case it says that. Well, the one we cited in our brief is Johnson. I really, that if you, you can't break it up. What happened here was he's trying to Not breaking it up because he's never challenged this judgment before. No, but he is trying to challenge each individual action in state court which he can do if there are successive judgments under Patterson. But once 2015, once he got the new judgment in 2015, that starts everything over again. Correct. And that's when he has a duty to bring all of it in one proceeding. What he did Tell me where that duty arises under second or successive case law. I don't find it anywhere. You have the advantage on me, Your Honor. I apologize. Making the argument. I understand that. Those are different concerns. Right. We didn't see it this way. Our position has been from the beginning that there was a 2015 judgment. It did not really get exhausted until 2020. So the 2018 and the 2020 petitions were Once he, the 2018, he chose to go forward that way. He didn't have to. I mean, he could have moved to stay in evade. Yes, yes, he could have. But that doesn't make his new habeas corpus petition second or successive. No, but it seems wrong. That's, that's Seems wrong, seems wrong is not I mean, I'd like to say a lot of times that just seems wrong. And I'm going to reverse because that just seems wrong. And my colleagues look at me and they're like, you're nuts. Because we just don't reverse when we think something seems wrong. So I agree with you that it is not the best use of judicial efficiency and resources. But the only, the only basis the district court relied on was that this was a second or successive petition. And I agree with you in part. I'm not speaking for my colleagues. I agree with you in part that it's second or successive after the 2009 judgment because of his 2018 habeas petition. He had the opportunity to raise it there if he wanted to go. And that was it. But the 2015 judgment is a new judgment. And it's never been challenged by a federal habeas corpus petition. Whatever other problems there may be. And you can raise them before the district court if you get there. It's not second or successive. Can I ask a question about, do you know when the mandate issued from the first on the 2010 judgment? I was trying to find that during opposing counsel's argument. I thought I had it in my, I thought I had their appendix in my briefcase, but I couldn't find it without making a disturbance. I do know that it is in their appendix, Volume 1 at Exhibit 10. I did find that reference to it in our brief. And that case told until the 13th of January of 2020 when the United States Supreme Court denied cert. So when Mr. Riley is in custody following the 2015 violation of probation, pursuant to which judgment is he held in custody? He was held in custody under two different judgments. He entered a plea, negotiated plea for the new law violation and for the violation of probation. He served out the new law violation first,  And he was most recently in custody, I believe, on the 2008 CF-4221, that case number. I believe that's right, but I'm not 100% certain of that. But you don't disagree that the 2015 VOP judgment generated or created a new judgment that at this point has not been challenged in the form of a federal habeas petition? That is correct. This is the first time he has challenged that judgment. I don't think that makes for good policy. And I'll be blunt about that. I think that encourages what happened here, which is to file one thing, hoping for the best, then file another, hoping for the best, maybe a different judge. Maybe I get success somewhere. And then file yet a third petition where you bring all of it together. That seems like that is an abuse of the writ, which earlier cases talked about. Do you have any thoughts on how this might apply in the 2255 context? In other words, if there's a violation of federal supervised release and there's a judgment imposed upon revocation of federal supervised release, would that trigger a new round of 2255 litigation? I don't know anything about 2255, Your Honor. I'm purely a state lawyer. We did make the distinction with Stewart versus their Stewart case that that was a 2255. And that's a different situation in 2255 because your 2255 is your post-conviction. So we thought that did not apply. Thank you very much. I ask that you affirm the ruling below dismissing the petition as second or successive. Thank you very much, Mr. Duffy. You know, Judge, you spend countless hours trying to get prepared for these arguments and try to identify everything that we think the court might be, you know, interested in and want to hear. And it's just, it's baffling to me that we identified the one thing that you wanted, which was, where is the appeal to the first DCA of the denial of the 3.850 motion? The reason I couldn't, I could not answer that the first time was that he did not appeal it because as was stated in the 2018, amended a petition, he was unable to because the claim was abandoned by post-conviction counsel at that time. So that, that is the reason that that portion does not appear in our charge. Makes sense. Okay. So if that's the case, then his tolling stops when the trial court denies 3.850 relief. Correct. Even though he hasn't exhausted that claim because he didn't appeal it to the DCA. That's correct. Okay. So when does, when does the trial court deny 3.850 relief? With respect to the 2009 original judgment? No, the 2010. April 19th of 2018. It's actually the same day. April 19th. 2018. Correct. So at the time he filed that 2018 petition, he had both exhausted claims being the 2010 judgments because that had made their way through state court. He's done there. But he also had unexhausted claims. That being, our position being, the 2009 original judgment because that had not yet been ruled on when he filed the 2018 petition, which was on April 27th of 2018. And the, at the time of the expiration of the AADPA's one-year limitations period on April 10th of 2019, that 2009 original judgment was not yet ready for federal habeas review. That came when the First District Court of Appeals issued its mandate affirming the denial of that 3.850 post-conviction relief on September 11th of 2019. So even in the hypothetical world where had Mr. Riley waited, the statute of limitations period is going to run on his 2009 original judgment had he not filed, or the, excuse me, with the 2010 judgment had he not filed it. How much time did he have left to go on his one-year AADPA clock at that point? Um, I believe there would have been a period from April 10th, 2019 to September 11th of 2019. So, a period of several months. But I would say whether we're talking about you know, several months, one day, 364 days, you know, he should be able to file what he can, when he can do it. And that's what he did in this case. So wait, I just want to confirm. So, the 2254 that he files with respect to the 2010 judgment, I have it as um, April 27, 2018. You have it as a different date? With respect to the 2018 petition, the challenging the 2010 V.O.P. judgment? Mm-hmm. When that was filed? April 27th of 2018. Okay. That's what I have. Okay. So, unless there are any other questions for me from, that I can answer, um, you know, we believe that the 2021 petition was not second or successive in its entirety. I didn't touch the 2015 petition because I think the court has heard enough on that. Um, but even with the 2009 original judgment, that should not be deemed second or successive. He should be allowed to challenge that in the 2021 petition because he could not have brought that in other petitions. Um, last thing I'll say with respect to the 2009 original judgment appearing in the 2020 petition and also the denial for it being second or successive which is not an adjudication on the merits and second or successive status only attaches to an adjudication on the merits. So, the district That case is currently here pending, right? That's my understanding, Your Honor. So, why do we have to, we may not even have to decide in this case whether or not this petition is second or successive as to the 2009 judgment because he's already separately attacked the 2009 judgment in the 2020 case that's pending here in a separate matter? That may be true, Your Honor. I will say we're not appointed on that portion of that case that's pending before the court. We're just here on this one. So, I certainly don't want to speak for any of his counsel that may be appointed in that case to, you know, affect any arguments that they may be making there. Were you appointed at the district court level or here? Here. Okay. Well, we thank you very, very much for your service not only to Mr. Riley but to us as well. We really appreciate it. Thank you, Your Honor. And I would just ask that Mr. Riley respectfully request that the court reverse this judgment of the district court dismissing the 21 petition for lack of jurisdiction as second or successive and remain back for further proceedings. Thank you both very much.